**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 12-4159**

_____

UNITED STATES OF AMERICA,

     Plaintiff – Appellee,

   v.

TEODORO ROSAS-HERRERA, a/k/a Valentin Villegas Villa,

     Defendant – Appellant.

_____

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:11-cr-00160-TDS-1)

_____

Submitted: November 2, 2012    Decided: December 13, 2012

_____

Before NIEMEYER and MOTZ, Circuit Judges, and HAMILTON, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

James B. Craven, III, Durham, North Carolina, for Appellant. Ripley Rand, United States Attorney, Angela H. Miller, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Teodoro Rosas-Herrera appeals his conviction and seventy-one months' sentence for illegally reentering the United States after having been deported subsequent to an aggravated felony conviction.  See 8 U.S.C. § 1326(a), (b)(2).  For the following reasons, we affirm.

I.

On February 6, 2011, Detective James Carter (Detective Carter) of the Alamance County, North Carolina Sheriff's Office was on duty driving his patrol vehicle when he observed another vehicle, traveling in a weaving pattern at approximately ten miles per hour in the opposite lane, with its front windshield completely iced over, with the exception of a three-inch by four-inch area on the driver's side.  In the judgment of Detective Carter, the driver of the vehicle could not adequately see approaching traffic from either the vehicle's right or left side, and therefore, was driving recklessly in violation of North Carolina law.  See N.C. Gen. Stat. § 20-140(b) ("Any person who drives any vehicle upon a highway or any public vehicular area without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property shall be guilty of reckless driving.").

2

After the vehicle passed, Detective Carter turned his patrol vehicle around in order to effectuate a stop of the vehicle he had just observed with the iced-over windshield. Once turned around, Detective Carter observed that such vehicle had turned left into a driveway and had pulled up to a closed gate. Detective Carter pulled his patrol vehicle up behind the vehicle and activated his blue lights.

Detective Carter approached the stopped vehicle and asked the driver for his driver's license and vehicle registration. The driver admitted that he did not have a valid driver's license or vehicle registration, but indicated that he did have a Mexican driver's license, identified himself as Carlos Matias Ortiz, and provided a date of birth. As Detective Carter returned to his patrol vehicle to run a check on the name and date of birth, he observed the driver exit the vehicle. Detective Carter then advised the driver to remain in the vehicle, but the driver fled on foot. Detective Carter called for back-up and chased the driver on foot for approximately eight to ten minutes until the driver stumbled and fell. At this time, Detective Carter secured the driver in handcuffs and arrested him for resisting a public officer.

By the time Detective Carter had returned to his patrol vehicle with the handcuffed driver in tow, two fellow officers had arrived on the scene with a drug-sniffing canine.

3

The driver was placed in a patrol vehicle while one of the officers walked the canine around the driver's vehicle. The canine alerted on the driver's side where the driver's door had remained open. In examining where the canine had alerted, the officer saw a firearm "'sticking under the seat.'" (J.A. 73). The firearm turned out to be loaded.

Once at the Alamance County jail, the driver came before a magistrate judge and again identified himself as Carlos Matias Ortiz. He was charged with the offenses of resisting a public officer and illegally carrying a concealed weapon. Of relevance to the issues on appeal, the driver's fingerprints, which had been taken during the routine booking process, matched the fingerprints of a man named Teodoro Rosas-Herrera. The name Carlos Matias Ortiz was listed as an alias. The driver subsequently admitted that his real name was Teodoro Rosas-Herrera (Rosas-Herrera) and that he was a citizen of Mexico.

Further investigation revealed that Rosas-Herrera had been removed from the United States on November 17, 2008, deported to Mexico, and had never been given permission to return to the United States. Records also showed that, on March 2, 2007, Rosas-Herrera had been convicted in the United States District Court for the Western District of North Carolina, of the offense of conspiracy to possess with intent to distribute a

4

quantity of cocaine, which is an aggravated felony under federal immigration law. See 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" as "illicit trafficking in a controlled substance").

Rosas-Herrera entered a conditional plea of guilty to one count of illegally reentering the United States after having been deported subsequent to an aggravated felony conviction, see id. § 1326(a), (b)(2), reserving the right to challenge on appeal the district court's denial of his prior motion to suppress all information law enforcement collected following his arrest that revealed his true identity (e.g., his name and fingerprints). The district court sentenced him to seventy-one months' imprisonment and three years' supervised release. This timely appeal followed.

II.

Rosas-Herrera first challenges the district court's denial of his motion to suppress the evidence of his identity. According to Rosas-Herrera, Detective Carter unreasonably seized him in violation of the Fourth Amendment when Detective Carter initially stopped him, and, therefore, all evidence resulting from such seizure should have been suppressed. Rosas-Herrera argues that the initial stop of his vehicle by Detective Carter violated the Fourth Amendment because Detective Carter lacked

any reasonable, articulable suspicion that he had committed a traffic violation in order to justify the stop. Building on this argument, Rosas-Herrera argues that he was then in exactly the same legal posture as the defendants in United States v. Oscar-Torres, 507 F.3d 224 (4th Cir. 2007), and Arizona v. Gant, 556 U.S. 332 (2009).

Rosas-Herrera's challenge to the district court's denial of his motion to suppress is without merit. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and the temporary detention of an individual during the stop of an automobile by a law enforcement officer constitutes a seizure of the person within the meaning of the Fourth Amendment, United States v. Ortiz, 669 F.3d 439, 444 (4th Cir. 2012). Of relevance here, "[o]bserving a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008). See also Ortiz, 669 F.3d at 444 ("law enforcement officers may stop a vehicle that they observe is violating a traffic law").

In considering the district court's denial of Rosas-Herrera's motion to suppress, we review the district

court's legal conclusions de novo and its factual findings for clear error, construing the evidence in the light most favorable to the government. United States v. Kelly, 592 F.3d 586, 589 (4th Cir. 2010). Moreover, we must "particularly defer to a district court's credibility determinations, for it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress." United States v. Abu Ali, 528 F.3d 210, 232 (4th Cir. 2008) (internal quotation marks omitted).

Here, the district court held an evidentiary hearing on Rosas-Herrera's motion to suppress, during which it heard live testimony from Detective Carter regarding, inter alia, the events leading up to his traffic stop of the vehicle driven by Rosas-Herrera. The district court found the testimony of Detective Carter to be credible and concluded that "the objective evidence support[ed] a reasonable, articulable suspicion that Rosas-Herrera was operating his vehicle recklessly under the circumstances by attempting to drive on the roadway without adequate vision through his windshield." (J.A. 80). Based on our review of the facts as found by the district court and the applicable law, we hold that Detective Carter's stop of the vehicle driven by Rosas-Herrera was amply supported by reasonable suspicion, and therefore did not violate the Fourth Amendment.

7

Our holding takes Rosas-Herrera's case completely outside of Oscar-Torres, and therefore renders such decision of no aid to Rosas-Herrera on this issue. In Oscar-Torres, the defendant was convicted of illegally reentering the United States following commission of a felony and deportation. 507 F.3d at 226. On appeal, the defendant challenged the district court's denial of his motion to suppress the fingerprint evidence and the records obtained through it as fruit of his illegal arrest. Id. The government conceded the illegality of the defendant's arrest at the appellate level, but argued the evidence should not be suppressed. Id. at 227. We reversed the judgment and remanded the case for the district court to determine whether, in obtaining the defendant's fingerprints (and attendant records), the police officers were motivated by an investigative purpose, and if so, ordered the district court to suppress such evidence. Id. at 232. Unlike the illegal arrest in Oscar-Torres, which led to the discovery of the defendant's fingerprints and attendant records in that case, there was no illegal arrest in the present case and Detective Carter's initial stop of Rosas-Herrera's vehicle was legal. Accordingly, Oscar-Torres is inapposite.

Gant is inapposite as well. In Gant, the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching

8

distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351. Rosas-Herrera only challenges the legality of his initial stop by Detective Carter and does not separately challenge the legality of the search of his vehicle following the canine alert on the driver's side. See Branch, 537 F.3d at 335-36 (police may order canine sniff of vehicle as part of routine traffic stop provided it does not unreasonably delay length of stop). Accordingly, Gant is of no help to Rosas-Herrera.

For the reasons stated, we hold the district court did not err in denying Rosas-Herrera's motion to suppress the evidence of his identity obtained as the fruit of his initial stop by Detective Carter. Accordingly, we affirm Rosas-Herrera's conviction for illegally reentering the United States after having been deported subsequent to an aggravated felony conviction.

III.

Rosas-Herrera challenges his sentence of seventy-one months' imprisonment on the basis that the district court should not have varied upward fourteen months from the high-end of his advisory sentencing range of forty-six to fifty-seven months'

9

imprisonment under the United States Sentencing Guidelines (USSG or Guidelines). Finding no error, we affirm.

We review the seventy-one month sentence imposed upon Rosas-Herrera by the district court for reasonableness under the deferential abuse-of-discretion standard. United States v. King, 673 F.3d 274, 283 (4th Cir.), cert. denied, 133 S. Ct. 216 (2012). In reviewing a variant sentence as in the present case, we consider "whether the sentencing court acted reasonably both with respect to its decision to impose such a sentence and with respect to the extent of the divergence from the sentencing range." United States v. Hernandez–Villanueva, 473 F.3d 118, 123 (4th Cir. 2007). Notably, the district court "has flexibility in fashioning a sentence outside of the Guidelines range," and need only set forth sufficient explanation to satisfy us that it considered the parties' arguments and has a reasoned basis for its decision. United States v. Diosdado-Star, 630 F.3d 359, 364 (4th Cir.), cert. denied, 131 S. Ct. 2946 (2011).

Our review of the entire record unequivocally shows that the district court specifically identified its reasons for the above-Guidelines sentence, which was based on the Sentencing Guidelines and the 18 U.S.C. § 3553(a) factors, and related to the particular facts of Rosas-Herrera's case. For example, the district court expressly stated its view that a seventy-one

10

month sentence was necessary to deter Rosas-Herrera from committing further crimes "particularly given the fact that a federal district court had already sentenced him to 57 months, and that proved to be insufficient to deter [Rosas-]Herrera from returning to the United States without permission and, on top of that, [he possessed] a loaded firearm." (J.A. 136); see § 3553(a)(2)(B) ("The court, in determining the particular sentence to be imposed, shall consider . . . the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct . . . ."). For a second example, the district court stated its view that a seventy-one month sentence was necessary "to protect the public, particularly given his drug distribution conviction and then his recent detention after having been caught with a loaded firearm ready to fire." (J.A. 136); see § 3553(a)(2)(C) ("The court, in determining the particular sentence to be imposed, shall consider . . . the need for the sentence imposed . . . to protect the public from further crimes of the defendant . . . ."). Our review of the entire record establishes that the district court acted reasonably in both its decision to vary upward from Rosas-Herrera's advisory sentencing range under the Guidelines and with respect to the extent of its variance. Accordingly, we affirm Rosas-Herrera's sentence.

11

IV.

In conclusion, we affirm Rosas-Herrera's conviction and sentence.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED